KYLE J. KAISER (13924)
VANESSA R. WALSH (16180)
Assistants Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: kkaiser@agutah.gov
      vwalsh@agutah.gov
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ADAM KELLER, as legal guardian of C.K., a minor child;<br><br>    Plaintiff,<br><br>v.<br><br>ALPINE SCHOOL DISTRICT; Alpine School District Board of Education; Samuel Y. Jarman, in his official capacity as Superintendent of Alpine School District; Ryan Burke, in his official capacity as Special Education Director of Alpine School District; Tarra Anderson, in her official and individual capacity; Jane Does 1-5, in their official and individual capacities; and the UTAH STATE BOARD OF EDUCATION; Sydnee Dickson, in her official capacity as the State of Utah Superintendent of Public Instruction,<br><br>    Defendants. | **DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00874-DBP<br><br>Magistrate Judge Dustin B. Pead |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iv

MOTION AND RELIEF SOUGHT ............................................................................ 1

INTRODUCTION ...................................................................................................... 1

RELEVANT FACTS ................................................................................................... 2

STANDARD OF REVIEW ......................................................................................... 3

ARGUMENT .............................................................................................................. 4

I.      KELLER'S CLAIMS FAIL TO SATISFY RULE 8's PLEADING STANDARD 5

      A.      Keller Has Not Shown A Failure to Modify Policies or Procedures or That Such a Failure Constituted a Violation of the ADA (Claim One) ...... 5

      B.      Keller Has Not Shown C.K. Was Denied Access to Educational Services (Claims Two and Four) ................................................................. 7

      C.      Keller Has Not Shown C.K. Was Not Being Served in the Most Integrated Setting or That The Setting Was Caused by or Resulted From the Alleged Abuse.  (Claim Three) .................................................... 9

      D.      C.K. Did Not Receive Unequal or Less Effective Educational Services (Count Five) ............................................................................. 10

II.     ASD DEFENDANTS DID NOT "SEIZE" C.K. IN VIOLATION OF THE FOURTH AMENDMENT ..................................................................................... 11

III.    KELLER LACKS STANDING TO BRING SUIT AGAINST STATE DEFENDANTS ................................................................................................... 12

      A.      Future Injury is Not Concrete or Particularized ........................................ 13

      B.      Harm is Not "Certainly Impending" ......................................................... 14

      C.      Any Alleged Harm to C.K. is Not Traceable to State Defendants ........... 15

IV.     EVEN IF C.K. HAS STANDING, STATE DEFENDANTS DID NOT FAIL IN THEIR RESPONSIBILITY TO OVERSEE ALPINE SCHOOL DISTRICT ........................................................................................................... 17

V.      JARMAN, BURKE, AND ANDERSON ARE NOT "PERSONS" FOR
        PURPOSES OF § 1983 ACTIONS ................................................................... 18

VI.     ANDERSON CANNOT BE SUED IN HER INDIVIDUAL CAPACITY
        UNDER THE ADA AND REHAB ACT ............................................................ 19

CONCLUSION.......................................................................................................................... 19

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Allen v. Wright,*
  468 U.S. 737 (1984) ............................................................................... 15

*Ambus v. Granite Bd. of Educ.,*
  995 F.2d 992 (10th Cir. 1993) ........................................................ 16, 18

*Ashcraft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................... 3, 10, 11

*Barnes v. Gorman,*
  536 U.S. 181 (2002) ............................................................................. 19

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................... 3

*Buchanan v. Maine,*
  469 F.3d 158 (1st Cir. 2006) ................................................................. 6

*Camarillo v. Carrols Corp.,*
  518 F.3d 153 (2d Cir.2008) ................................................................... 6

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ....................................................................... 12, 14

*Cohon ex rel. Bass v. N.M. Dep't of Health,*
  646 F.3d 717 (10th Cir. 2011) ............................................................... 7

*Couture v. Bd. of Educ. of the Albuquerque Pub.,*
  *Schs.,* 535 F.3d 1243 (10th Cir. 2008) ................................................. 11

*Daimler Chrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ............................................................................. 12

*Dillery v. City of Sandusky,*
  398 F.3d 562 (6th Cir. 2005) ................................................................. 6

*Duke Power Co. v. Carolina Environmental Study Group, Inc.,*
  438 U.S. 59 (1978) ............................................................................... 15

*Ebonie S. v. Pueblo Sch. Dist. 60,*
    695 F.3d 1051 (10th Cir. 2012) ................................................................. 11, 12

*Estate of Saylor v. Regal Cinemas, Inc.,*
    54 F.Supp.3d 409 (D. Md. 2014) ...................................................................... 7

*Glenn v. Davis Sch. Dist.,*
    No. 1:19-CV-00008-DAK, 2019 WL 5423728 (D. Utah Oct. 23, 2019) ................................ 19

*Harris v. Champion,*
    51 F.3d 901 (10th Cir. 1995) .......................................................................... 19

*Haynes v. Williams,*
    88 F.3d 898 (10th Cir. 1996) .......................................................................... 19

*J.V. v. Albuquerque Pub. Sch.,*
    813 F.3d 1289 (10th Cir. 2016) ..................................................................... 6, 8

*Johnson by Johnson v. Thompson,*
    971 F.2d 1487 (10th Cir. 1992) ......................................................................... 7

*Jojola v. Chavez,*
    55 F.3d 488 (10th Cir. 1995) .......................................................................... 18

*Kansas Penn Gaming, LLC v. Collins,*
    656 F.3d 1210 (10th Cir. 2011) ......................................................................... 3

*Kiman v. N.H. Dep't of Corr.,*
    451 F.3d 274 (1st Cir. 2006) ........................................................................... 7

*Lewis v. Casey,*
    518 U.S. 343 (1996) .................................................................................. 12

*Michigan v. Chesternut,*
    486 U.S. 567, 108 S.Ct. 1975 (1988) .................................................................. 11

*Monell v. Department of Social Servs.,*
    436 U.S. 658 (1978) .................................................................................. 16

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund,*
    575 U.S. 175 (2015) ................................................................................... 3

*Robertson v. Las Animas Cnty. Sheriff's Dep't,*
    500 F.3d 1185 (10th Cir. 2007) ......................................................................... 7

*Schlesinger v. Reservists Comm. to Stop the War,*
  418 U.S. 208 (1974) ............................................................................................. 13

*Schorr v. Borough of Lemoyne,*
  243 F.Supp.2d 232 (M.D. Pa. 2003) ..................................................................... 7

*Scott v. City of Albuquerque,*
  711 F. App'x 871 (10th Cir. 2017) ......................................................................... 8

*Solid Q Holdings, LLC v. Arenal Energy Corp.,*
  No. 2:15-CV-00419-DN-PMW, 2017 WL 782283 (D. Utah Feb. 28, 2017) ............ 4

*United States v. Hays,*
  515 U.S. 737 (1995) ............................................................................................. 15

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,*
  454 U.S. 464 (1982) ............................................................................................. 13

*Warth v. Seldin,*
  422 U.S. 490 (1975) ............................................................................... 12, 13, 14

*Will v. Michigan Dept. of State Police,*
  491 U.S. 58 (1989) ............................................................................................... 19

## Statutes

42 U.S.C. § 12132 ...................................................................................................... 7

42 U.S.C. § 12134(a) .................................................................................................. 9

42 U.S.C. § 1983 ........................................................................................... 16, 18, 19

50 U.S.C. § 1881a ..................................................................................................... 14

Article III of the U.S. Constitution ........................................................................... 12

U.S. Const. amend. IV. A .......................................................................................... 11

Utah Code Ann. § 53A-1-401(2) ............................................................................... 15

Utah Code Ann. §§ 53E-3-401(8)(a)(i)-(iv) .............................................................. 16

## Rules

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 3

Federal Rules of Civil Procedure 12(b)(6) ............................................................. 1

Rule 8 .............................................................................................................. 3, 4, 5

## Regulations

28 C.F.R. § 35.130(b)(7) ....................................................................................... 9

28 C.F.R. §35.130(b)(7)(i) ..................................................................................... 5

28 C.F.R. Pt. 35, App. A (2010) ........................................................................... 9

28 CFR § 35.130(d) ............................................................................................... 9

34 C.F.R. § 104.4(a) ......................................................................................... 7, 10

34 C.F.R. § 104.4(b)(1) ....................................................................................... 10

Utah Admin. Code § R277-609-5 ........................................................................ 18

Utah Admin. Code § R277-613. Paragraph 91 .................................................... 18

## MOTION AND RELIEF SOUGHT

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and DUCivR-7-1(a), Defendants ALPINE SCHOOL DISTRICT; Alpine School District Board of Education; Samuel Y. Jarman; Ryan Burke; Tarra Anderson (collectively "ASD Defendants"), and Utah State Board of Education and Sydnee Dickson (collectively "State Defendants"), by and through counsel, Vanessa R. Walsh, Assistant Utah Attorney General, submit this Partial Motion to Dismiss State Defendants from all claims, ASD Defendants from counts one, two, three, four, five, and eight, and Burke, Jarman, and Anderson from count nine. Plaintiff's allegations with respect to these claims do not state a claim for which relief can be granted.

## INTRODUCTION

The Complaint alleges Tarra Anderson, a special education teacher for Alpine School District, deprived C.K., a 10-year-old non-verbal individual with multiple disabilities, of food and water and improperly used special needs equipment. Based on Anderson's alleged actions, Keller uses the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("Rehab Act") to argue ASD failed to train Anderson, denied C.K. access to educational services, failed to provide services to C.K. in the most integrated setting, and provided unequal educational services. He also alleges State Defendants' "persistent and repeated failure" to supervise the actions of all public education entities created an environment that allowed abuse to occur without repercussion. Simply put, the allegations in this case are not related to any causes of action under the ADA or Rehab Act.

Keller's allegations and demand for relief suggest that this suit is a mechanism to effect change for all disabled students in the State of Utah. Keller repeatedly quotes language from the ADA and Rehab Act, both of which prohibit discrimination based on disability and require public entities to administer services in the most integrated setting. The alleged wrongdoing in this case relates to a single student. It is not related to the effectiveness of integrated or segregated schools. Allowing Keller to make this case about oversight of the public education system as it relates to special education is generally inappropriate for judicial action. Such generalized claims suggest a generalized remedy. If Utah schools are not providing access for disabled students in the most integrated setting or are providing unequal educational services for its disabled students, that debate and remedy is more appropriately held in the representative branches of Utah government.

## RELEVANT FACTS

C.K. is a 10-year-old non-verbal individual with multiple disabilities. Comp. ¶¶ 19-20. He attended Dan Peterson School, a special purpose school for students with moderate to severe disabilities in the Alpine School District ("ASD"). *Id*. ¶¶ 21-22. He was placed in Tarra Anderson's classroom. *Id*. ¶ 24. Anderson was assisted by several aides. *Id*. ¶ 24. Anderson frequently communicated with C.K.'s parents using notes in a "Communication Folder." *Id*. ¶¶ 31, 47, 50-51, 61. Those notes included steps taken to manage C.K.'s behavioral issues, including use of a Rifton Chair. *Id*. ¶¶ 47, 50-51, 61. The Rifton chair was not used as a disciplinary tool. *Id*. ¶ 54. ASD Defendants documented each time the chair was used. *Id*. ¶ 62.

The Utah Constitution vests State Defendants with the general control and supervision of the state public education system. *Id*. ¶ 145. State Defendants are required to develop model

policies for school districts. *Id*. ¶ 91. ASD maintained several policies related to physical

intervention and mechanical restraint. *Id*. ¶¶ 85-88, 95-96. Those policies were in conformance

with the policies outlined by State Defendants. *Id*. ¶ 89.

## <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss, a plaintiff must offer sufficient facts that, if accepted as

true, "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007), allowing a court to draw the *reasonable* inference that the defendant is

liable. Further, the Supreme Court has repeatedly held that "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Omnicare, Inc. v.

Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175, 194 (2015); *Ashcraft v.

Iqbal*, 556 U.S. 662, 678 (2009). A court need not accept as true legal conclusions

masquerading as factual allegations. *Twombly*, 550 U.S. at 555. Finally, "where the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at

679 (quoting Fed. R. Civ. P. 8(a)(2)).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

While Rule 8 does not demand "detailed factual allegations," a pleading that offers "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555. Nor can a complaint simply offer "'naked assertion[s]' devoid of

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[A]

plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming,*

*LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). When considering a motion to dismiss for failure to state a claim, "the thrust of all well-pleaded facts in the complaint is presumed, but conclusory allegations need not be considered." *Solid Q Holdings, LLC v. Arenal Energy Corp.,* No. 2:15-CV-00419-DN-PMW, 2017 WL 782283, at *1 (D. Utah Feb. 28, 2017).

## **ARGUMENT**

Keller alleges C.K. received a segregated educational experience in violation of the ADA Rehab Act and because of that segregation, he was subject to abuse. Comp. ¶¶ 43, 46, 102-103, 117. He blames this violation on ASD Defendants because C.K. attended a special purpose school for students with moderate to severe special needs and State Defendants' failure to provide oversight and training to school districts statewide. His argument fails on several fronts.

First, Keller fails to meet Fed. Rule of Civ. P Rule 8's pleading standard. He attempts to turn the use of sensory and behavioral devices into larger scale policy issues about segregation and unequal treatment for students with disabilities. He has not adequately alleged facts supporting C.K.'s attendance at Dan Peterson violated the ADA or Rehab Act. For that reason, ASD Defendants must be dismissed from claims one, two, three, four, and five.

Second, Keller has not alleged facts sufficient to support ASD Defendants "seized" C.K. in violation of the Fourth Amendment or that any such "seizure" was based solely on his disability. Accordingly, ASD Defendants must be dismissed from claim eight.

Third, Keller lacks standing to sue State Defendants, and even if he possesses it, he has not established State Defendants failed in any way in exercising their statutory duties. He has not shown that State Defendants actions or inactions caused C.K. harm. State Defendants must therefore be dismissed from all claims.

Fourth, Keller seeks relief from Jarman, Burke, and Keller in their official capacities. Persons acting in their official capacities are not "persons" for purposes of § 1983 claims. They must be dismissed from Claims eight and nine.

Lastly, Keller seeks relief from Anderson in her individual capacity. Neither the ADA nor the Rehab Act, allow for suits against defendants in their individual capacities. She must be dismissed in that capacity from Claims one through five.

## I.   KELLER'S CLAIMS FAIL TO SATISFY RULE 8's PLEADING STANDARD

Keller alleges "C.K. was subjected to violent acts and violations of his . . .  rights as a . . . consequence of ASD's denial of his right to integrated educational settings. . .", Comp. ¶ 103, and insists he "receive a segregated educational experience," Id. ¶ 136, which resulted in abuse and neglect. He does not offer factual allegations to support claims one through five, each of which allege ADA or Rehab Act violations.

### A.   Keller Has Not Shown A Failure to Modify Policies or Procedures or That Such a Failure Constituted a Violation of the ADA (Claim One).

Keller quotes language from 28 C.F.R. §35.130(b)(7)(i) which requires a public entity to make reasonable modifications to policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. Comp. ¶¶ 115, 129. He states an inapplicable rule and then fails to allege facts to support a violation of that rule.

Keller suggests the reasonable modification at issue is additional training of ASD staff. Id. ¶¶ 122-123, 130. He does not allege any facts which establish (1) a lack of training; (2) that additional training was necessary to avoid discrimination; or (3) any failure to make modifications to training policies was done on the basis of C.K.'s disability. He alleges ASD failed to train Anderson, Id. ¶¶ 40, 122, and State Defendants ineffectively and inadequately

trained school districts statewide. *Id*. ¶ 45. Based on those allegations, he concludes that lack of training resulted in harm to C.K. It is exactly the type of threadbare recital supported by a conclusory statement that was prohibited in *Iqbal*.

Moreover, this circuit has not recognized a failure-to-train claim of discrimination under the ADA. *J.V. v. Albuquerque Pub. Sch*., 813 F.3d 1289, 1297 (10th Cir. 2016). In *J.V.* appellants asserted a failure to make reasonable accommodations claim under a theory that a failure to train security officers on how to calm disruptive disabled students caused a particular student emotional harm. *Id*. In that case, as applicable in this one, the court declined to recognize a failure to train claim under the ADA because appellants failed to provide evidence to support their theory. *Id.*

Other circuits have declined to determine if a claim exists under the ADA or have not stated how it fits into the framework of the ADA. In Buchanan v. Maine, 469 F.3d 158, 177 (1st Cir. 2006) the plaintiff alleged the policies put in place by a law enforcement agency were deficient and the training provided to officers was insufficient. The court found the plaintiff was not denied benefits by reason of mental illness and declined to determine whether such a claim existed. Id. The Sixth Circuit has said that failure to train is more properly considered under a disparate impact theory. *See* Dillery v. City of Sandusky, 398 F.3d 562, 568 (6th Cir. 2005) ("The failure of Sandusky to install handicapped-accessible sidewalks and to train its employees about the ADA affects all disabled persons, not just Dillery. Thus, Dillery cannot demonstrate that Sandusky intentionally discriminated against her specifically by failing to undertake these actions."). Other courts have recognized such a claim, however, they have not stated how it fits within the framework of ADA Title II discrimination theories. *See* Camarillo v.

Carrols Corp., 518 F.3d 153, 158 (2d Cir.2008); Estate of Saylor v. Regal Cinemas, Inc., 54

F.Supp.3d 409, 424 (D. Md. 2014); Schorr v. Borough of Lemoyne, 243 F.Supp.2d 232, 235

(M.D. Pa. 2003).

    B.  <u>Keller Has Not Shown C.K. Was Denied Access to Educational Services (Claims Two</u>
<u>and Four)</u>

      Under the ADA, no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs,

or  activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.

C. § 12132. To state a claim under Title II, a "plaintiff must allege that (1) he is a qualified

individual with a disability, (2) who was excluded from participation in or denied the benefits of

a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or

discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dep't,* 500

F.3d 1185, 1193 (10th Cir. 2007) (citing 42 U.S.C. § 12132; *Kiman v. N.H. Dep't of Corr.,* 451

F.3d 274, 283 (1st Cir. 2006)).

      Under the Rehab Act, "no qualified handicapped person shall, on the basis of handicap,

be excluded from participation in, be denied the benefits of, or otherwise be subjected to

discrimination under any program or activity which receives Federal financial assistance." 34

C.F.R. § 104.4(a). To state a claim under Section 504, "a plaintiff must prove (1) that he is a

'handicapped individual' under the [ADA], (2) that he is 'otherwise qualified for the [benefit]

sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the

program or activity in question receives federal financial assistance." Cohon ex rel. Bass v. N.M.

Dep't of Health, 646 F.3d 717, 725 (10th Cir. 2011) (quoting Johnson by Johnson v. Thompson,

971 F.2d 1487, 1492 (10th Cir. 1992)).

Keller alleges C.K. was persistently and repeatedly excluded from the classroom environment and that such exclusion denied him access to school services. Comp. ¶¶ 133, 139. To support that claim he offers (1) C.K. was in the hallway on three occasions[1] during rest time. *Id*. ¶¶ 50-51, 71; and (2) a Board Certified Behavioral Analyst ("BCaBa") aide was working with C.K. in a separate room, and after five to ten minutes, Anderson entered the room and placed him in the Rifton chair. *Id.* ¶ 69.  He does not offer any other occasion of C.K. being secluded in a separate room, nor does he allege Anderson improperly placed him in that room with the BCaBA aide. Three occasions of being removed from a classroom for problematic behavior over a two-year period cannot be considered a denial of benefits. *See J.V. v. Albuquerque Pub. Sch., 813 F.3d 1289, 1296 (10th Cir. 2016)* (a 15–minute interference with a disabled child's education cannot be considered a denial of benefits under Title II).

Keller has also failed to show any of those instances were by reason of disability. "[T]here is no authority suggesting a school may not regulate a student's conduct if that conduct is a manifestation of a disability." *Scott v. City of Albuquerque, 711 F. App'x 871, 885 (10th Cir. 2017)* (unpublished). C.K. was not placed in the hall during rest time because of his disability, but rather because of his behavior. Comp. ¶ 51. According to C.K.'s Student Health Plan, he could have high aggression and would kick, scratch, pull hair, and run/dart.[2] Such behaviors can be disruptive to other students in the classroom. Keller has offered no facts that being removed from the classroom on three occasions was by reason of his disability.

---

[1] It is unclear from the complaint if ¶ 71 and ¶ 77 refer to the same BCaBA aide and same occurrence.

[2] Comp. ¶ 28 indicates C.K.'s Student Health Care Plan contained "detailed descriptions of his unique behavioral tendencies." These specific behaviors are contained in that Plan. At the Court's option, Defendants will file that Plan under seal.

C. <u>Keller Has Not Shown C.K. Was Not Being Served in the Most Integrated Setting or
That The Setting Was Caused by or Resulted From the Alleged Abuse.  (Claim Three)</u>

Congress instructed the Attorney General to issue regulations implementing Title II's

discrimination proscription. *See* 42 U.S.C. § 12134(a). One such regulation, known as the

"integration regulation," requires a "public entity [to] administer . . . programs . . . in the

most integrated setting appropriate to the needs of qualified individuals with disabilities." 28

CFR § 35.130(d). The "most integrated setting appropriate" is defined as "a setting that enables

individuals with disabilities to interact with nondisabled persons to the fullest extent

possible." 28 C.F.R. Pt. 35, App. A (2010).  A public entity must make reasonable modifications

in policies, practices, or procedures when the modifications are necessary to avoid discrimination

on the basis of disability, unless the public entity can demonstrate that making the modifications

would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. §

35.130(b)(7).

Keller concludes C.K. was not being served in the most integrated setting because of

Defendants' "insistence that C.K. receive a segregated educational experience". Comp. ¶ 136.

He does not provide any facts to support any violation of the integration regulation, nor does he

allege facts that reasonable accommodations were not made. Adding to this crowded suite of

issues, he does not allege facts that defendants "insisted" on anything, or that insistence was

based on C.K.'s disability. Keller does not offer any facts about why C.K. attended at Dan

Peterson, why it was not the most integrated setting, how it was restrictive, or how his attendance

there resulted in neglect. This case is about alleged misuse of special needs equipment. It is not

about integrated settings or reasonable modifications. If Keller wishes to claim C.K. was not in

the most integrated setting, he must allege facts that support that claim. The facts alleged about

misuse of equipment do not support his integration claims. They are precisely the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that the Supreme Court has held to be inadequate in stating a claim for relief. *Iqbal*, 556 U.S. at 1940.

### D. C.K. Did Not Receive Unequal or Less Effective Educational Services (Count Five)

Under the Rehab Act, no qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives federal financial assistance. 34 C.F.R. § 104.4(a). A recipient of federal financial assistance must not deny a qualified individual "the opportunity to participate in or benefit from the aid, benefit, or service" they provide. *Id.* § 104.4(b)(1)(i). Lastly, a covered entity is prohibited from providing aids, benefits, or services to qualified individuals with disabilities in a manner that is not equal to or as effective as that provided to others. *Id.* §§ 104.4(b)(1)(ii)-(iii).

Keller alleges C.K. received "inherently unequal and inferior to and less effective educational services than those provided to other students without disabilities" in violation of 34 C.F.R. § 104.4(b)(1). Comp. ¶¶ 141-42. He does not allege any facts to support, or even to suggest, what the unequal or less effective service was or that aids, benefits, or services were not equal to or as effective as those provided to non-disabled students. At best, he offers "ASD consistently reports to law enforcement and appropriate state agencies any instance of abuse, neglect, or assault by ASD staff against non-disabled students*." Id.* ¶ 107. He asks the Court to make the unreasonable inference that because ASD reports other types of assault, C.K. received unequal or less effective services. As in the case in Keller's most integrated setting claim (claim 3), if he wishes to claim C.K. received unequal or less effective educational services, he must

allege facts that support that claim. The facts alleged about misuse of equipment do not support

unequal services claims. Even if they did, he has not alleged any fact to support any inequality in

those services was because of C.K.'s disability. They are precisely the "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements," that the Supreme

Court has held to be inadequate in stating a claim for relief. *Iqbal*, 556 U.S. at 1940.

## II.   ASD DEFENDANTS DID NOT "SEIZE" C.K. IN VIOLATION OF THE FOURTH AMENDMENT

The Fourth Amendment of the United States Constitution provides that "the right of the

people to be secure . . . against unreasonable searches and seizures, shall not be violated." U.S.

Const. amend. IV. A seizure occurs when a "a reasonable person would have believed that he

was not free to leave." *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975 (1988). "We

must think about seizures differently in the school context, as students are generally not at liberty

to leave the school building when they wish." *Couture v. Bd. of Educ. of the Albuquerque Pub.

Schs.,* 535 F.3d 1243, 1250-51 (10th Cir. 2008).

In *Ebonie S. v. Pueblo Sch. Dist. 60,* 695 F.3d 1051, 1054-55 (10th Cir. 2012), Ebonie, a

student with multiple developmental and intellectual disabilities, was placed in a U-shaped desk,

such that when her chair was completely pulled in, she was surrounded by the desk on three

sides. A wooden bar ran the length of the back of the desk. *Id*. at 1054. When she sat at the desk,

the bar rested behind her chair, preventing her from pushing her chair out. *Id.* The special

education teacher used the desk to discipline Ebonie and to ensure that she remained on-task and

did not disrupt the classroom. *Id*. at 1055. Everyone agreed Ebonie did not need the desk for

orthopedic purposes and that the desk was never used as an emergency measure to ensure her

own safety or the safety of others. *Id.* The court found use of the desk was not a seizure under the

Fourth Amendment even though the desk restricted her movement, Ebonie could not lift the bar to remove herself, and was indisputably not allowed to leave her desk. *Id*. at 1057.

This case is analogous to *Ebonie*. C.K. could not unbuckle himself from the chair. Comp. ¶ 55. The chair was used to prevent disruption in the classroom. *Id.* ¶ 50. It was not medically needed. *Id.* ¶ 48. Unlike Ebonie, where the desk was never used for her safety or the safety of others but rather as a disciplinary tool, the chair was used as a safety measure to prevent C.K. from hitting, kicking, screaming, and pinching. *Id.* ¶ 61. Giving light to the facts most favorable to Keller, even if it were used as punishment, as was the case in *Ebonie,* its use still does not rise to the level of a seizure.

### III.    KELLER LACKS STANDING TO BRING SUIT AGAINST STATE DEFENDANTS

Cases must meet Article III of the U.S. Constitution standing requirements as a matter of jurisdiction. "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotations omitted). Additionally, a plaintiff must demonstrate standing for each claim "he seeks to press and for each form of relief that is sought." *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *see also Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross.").

A plaintiff cannot rely on the legal rights of others to assert his own claim. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). "[E]ven when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating 'abstract questions of wide public

significance' which amount to 'generalized grievances.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474-75 (1982).

Keller presses seven claims against State Defendants for prospective relief in the form of declaratory relief and injunctive relief and must show standing for all seven claims. *See* Comp. ¶¶ 111-50. The generalized language of Keller's demands suggest his Complaint may be an attempt to shoehorn the suit into a generalized grievance regarding State Defendants, which is generally not justiciable under Article III. Although Keller argues past harm is individualized, his description of future harm and redressability exceeds the scope of individual harm and relief.

A. Future Injury is Not Concrete or Particularized

Without a concrete injury, actual or imminent, a dispute is not capable of judicial resolution. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220–21 (1974). To show that a future injury is concrete and particularized, a plaintiff must point to some specific practice that would harm him and how he would personally and tangibly benefit from the intervention of a court. *Warth v. Seldin*, 422 U.S. 490, 508 (1975). In *Warth*, members of racial minorities challenged zoning ordinances that restricted the availability of low-income housing by arguing that the ordinances would effectively preclude racial minorities from living in the area. *Id.* at 503. Some of the *Warth* plaintiffs sought standing based on their intention or desire to live in the area, but the Court determined that even if the zoning ordinances were favorable to the plaintiffs, they would still have to rely on decisions of third parties, such as developers, to secure low-cost housing, so the injury was far from concrete. *Id.* at 504-05.

Keller asserts that violations of the ADA and the Rehab Act go unchecked by State Defendants. Comp. ¶¶ 42-45. He seeks an injunction requiring State Defendants' administrative

rule-making, dispersal of federal funds, budgetary and programmatic oversight of school, and all enforcement activities are carried out in strict conformance with the ADA and Rehab Act. *Id.* ¶ 165. He asserts that unless a court intervenes, C.K. will suffer violations of the ADA and Rehab Act. *Id.* ¶ 165. He does not describe those harms in a tangible way. He simply describes the "policies, practices, customs and conduct which subject *students such as C.K.* to the harms complained of herein." *Id.* ¶ 165. Rather than specify certain harms, Keller points to broader harms like those experienced by C.K. or by students like C.K. This generalized harm is too intangible to be a justiciable dispute. Just as the plaintiffs in *Warth* failed to point to what personal interests would be harmed by the defendants, Keller points only to generalized violations similar to previous experiences or similar to other students.

B.  Harm is Not "Certainly Impending"

A plaintiff must also show that the injury is "certainly impending," not simply a possibility. *Clapper,* 568 U.S. at 409 (2013). In *Clapper*, the Supreme Court considered Amnesty International's standing to enjoin enforcement of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1881a, based on the claim that Amnesty was a likely target of § 1881 surveillance because of its significant communications with individuals who may also be targets of § 1881 surveillance. *Id.* at 401. The court rejected Amnesty's injury theory because a "highly attenuated chain of possibilities" stood between Amnesty and the speculated harm. *Id.* at 410. Before Amnesty could be harmed, a series of events would be required to occur, so the Court concluded that too many actors and decisions made the harm too speculative. *Id.* at 414.

Keller similarly speculates C.K. will be harmed unless State Defendants are ordered to ensure meaningful compliance by Utah school districts with the mandates of the ADA and Rehab

Act. Comp. ¶ 165. The reality is that the harm Keller seeks to avoid is uncertain. Even if State

Defendants failed to carry out their statutory duties C.K. is not guaranteed, with any degree of

certainty, to experience further harm. ASD could employ appropriate policies and actions to

ensure its compliance with ADA and the Rehab Act.

C.  Any Alleged Harm to C.K. is Not Traceable to State Defendants

Causation and redressability are both constitutional requirements for standing. *United

States v. Hays*, 515 U.S. 737, 743 (1995). The requirements are separate and distinct. *Allen v.

Wright*, 468 U.S. 737, 753 n.19 (1984). To show causation and redressability, a plaintiff must

show his injuries are "fairly traceable" to the challenged conduct and that the requested relief is

likely to address the injury. *Id.* at 751. Although the requirements are separate and distinct, the

inquiries are still intertwined. To satisfy the causation requirement of standing, the challenged

conduct must be the "but for" cause of the alleged injury. *Duke Power Co. v. Carolina

Environmental Study Group, Inc.*, 438 U.S. 59, 74-75 (1978).

Keller asserts State Defendants have ultimate authority over public education, Comp. ¶ 5,

however provides no support for that assertion. Taken alone, Art. X, § 3 implies State

Defendants can control public education systems in Utah; however, the Utah State Legislature

interprets the role of State Defendants more narrowly in statute. Utah Code Ann. § 53A-1-401(2)

defines "general control and supervision" as "directed to the whole system," and § 53A-1-1-

401(2) explicitly denies State Defendants the power to "govern, manage, or operate school

districts, institutions, and programs, unless granted that authority by statute."

Powers specifically granted to State Defendants by statute include the authority to

establish minimum standards for qualification and certification of teachers, graduation

requirements, school accreditation, school building sites, school lunch programs, and student accounting requirements. *Id*. § 53A-1-402(1). Additionally, State Defendants have the duty to "maximize local control and flexibility." *Id*. § 53E-3-802(2)(c). Taken as a whole, the statutory framework provides more limited power to State Defendants than Keller's characterizations.

Consistent with the limited role of the State Defendants, individual school districts retain significant autonomy under the statutory framework. The Tenth Circuit Court of Appeals considered this autonomy significant enough to note an "examination of the Utah statutory scheme reveals that, although the State Board [of Education] regulates many aspects of the public school system, significant autonomy is vested in the local boards." *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 995–96 (10th Cir. 1993). The court in *Ambus* continues with "basic responsibility for operation of the public school system of this state has been delegated by the Legislature primarily to local school boards, subject to general control and supervision by the State Board of Education." *Id*. This "significant autonomy" was sufficient to sever local Utah school boards as "arms of the state" for purposes of sovereign immunity under 42 U.S.C. § 1983 and subject local school boards to § 1983 liability under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978). *Id*. at 995-96

Keller appears to seek relief which forces State Defendants to withhold funding from local school districts who do not comply with the requirements of the ADA or the Rehab Act. State Defendants do not have the duty to withhold funding, only the discretion. *See* Utah Code Ann. §§ 53E-3-401(8)(a)(i)-(iv) ("If an education entity violates this public education code or rules authorized under this public education code, the state board *may* … (i) require the education entity to enter into a corrective action agreement with the state board; (ii) temporarily or permanently

withhold state funds from the education entity; (iii) require the education entity to pay a penalty; or (iv) require the education entity to reimburse specified state funds to the state board.") (emphasis added). Since State Defendants also have a duty to act in the best interests of students when administering federal programs, withholding federal funding would be a drastic step. *See Id*. § 53E-3-802(2)(b) ("School officials shall: . . . (b) interpret the provisions of federal programs in the best interest of students in this state.").

The autonomy of ASD breaks the causal chain between C.K. and State Defendants, while also interrupting the possibility of any redress originating from State Defendants from reaching C.K.

## IV.   EVEN IF C.K. HAS STANDING, STATE DEFENDANTS DID NOT FAIL IN THEIR RESPONSIBILITY TO OVERSEE ALPINE SCHOOL DISTRICT

Keller alleges a persistent and repeated failure of State Defendants to supervise the actions of public entities. Comp. ¶¶ 146, 150. He does not provide a basis for any failure, let alone a repeated or persistent one. Pursuant to its local autonomy, ASD has many policies and procedures in place that comply with State Defendants' standards. Keller cites several of ASD's policies regarding physical intervention and abuse. *Id.*  ¶¶ 85-89, 95-96. The fact ASD has those policies and procedures in place demonstrates State Defendants' effectiveness in making recommendations to local school boards and undermines Keller's assertion that State Defendants failed to appropriately monitor ASD.

Paragraphs 43-45, 90, 92-94, make blanket statements State Defendants failed to (1) fulfill a duty to monitor school district compliance with policies; (2) impose penalties for policy violations; (3) develop policies; and (4) provide technical assistance to schools. Those conclusory allegations are unsupported by a recitation of facts. Moreover, some of those

allegations are incorrect. For example, ¶ 91 alleges State Defendants do not develop model policies regarding "disruptive student behavior and appropriate consequences."  He is wrong on this point. Policies for disruptive student behavior can be found at Utah Admin. Code § R277-613. Paragraph 91 alleges State Defendants do not enforce Utah Admin. Code § R277-609-5. State Defendants cannot enforce the policies of school districts. As established in *Ambus,* school districts have significant autonomy. *Ambus*, 995 F.2d at 995–96. Paragraph 93 alleges State Defendants make no efforts to enforce mandatory reporting requirements required by Utah Admin. Code § 277-609-8. State Defendants introduced preliminary collection information on physical restraint and seclusion reporting in February 2018, found at :

https://www.schools.utah.gov/file/4928e0bf-2362-49bc-af75-59015f89eb4b. Pages 215-216 of that document show that revisions to their data collecting process, and page 161 reflects a detailed field description.

　　　Even if he could establish a failure, he does nothing to support his conclusions that State Defendants' administrative rule-making, dispersal of federal funds to school districts, budgetary and programmatic oversight of school districts, or enforcement activities are not in compliance with the ADA or Rehab Act.

### V.　　JARMAN, BURKE, AND ANDERSON ARE NOT "PERSONS" FOR PURPOSES OF § 1983 ACTIONS

　　　Keller's eighth and ninth causes of action assert a deprivation of civil rights arising out of 42 U.S.C. § 1983 against ASD Defendants. Section 1983 provides a remedy against "persons" who violate federal rights while "acting under color of state law." 42 U.S.C. § 1983; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). To be a proper defendant for a damages action under § 1983, the defendant must be a "person" as that term has been interpreted by federal case law.

*Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). A state official who acts in his or her official capacity, is a not a 'person' within the meaning of § 1983." *Harris v. Champion*, 51 F.3d 901, 905–06 (10th Cir. 1995); *see also Will*, 491 U.S. at 71.

Jarman, Burke, and Anderson[3] are sued in their official capacities and therefore are not "persons" subject to suit under the federal civil rights statute. As such, they should be dismissed with prejudice from claims eight and nine.

## VI.   ANDERSON CANNOT BE SUED IN HER INDIVIDUAL CAPACITY UNDER THE ADA AND REHAB ACT

Neither Title II of the ADA or the Rehab Act, allow for suits against defendants in their individual capacities. *Glenn v. Davis Sch. Dist.,* No. 1:19-CV-00008-DAK, 2019 WL 5423728, at *4 (D. Utah Oct. 23, 2019); *Haynes v. Williams,* 88 F.3d 898, 899 (10th Cir. 1996). Suits against individuals must proceed in their official capacity. "[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously" so the recipient can decide whether to knowingly and voluntarily accept those terms. *Barnes v. Gorman*, 536 U.S. 181, 186 (2002).

Claims one, two, three, four, and five are against all defendants and relate exclusively to ADA and Rehab Act violations. Anderson, in her individual capacity, must be dismissed from those claims.

## CONCLUSION

Keller has not alleged any facts to support C.K. was denied access to educational services, that any defendants failed to provide services to C.K. in the most integrated setting, or

---

[3] Anderson is sued in her individual and official capacity.

that he received unequal educational services. He lacks standing to sue State Defendants and has failed to show the use of a Rifton chair constituted a seizure. His generalized grievance approach suggests this suit is an attempt to turn allegations of misuse of special education equipment into a policy argument about State Defendants' oversight of the public education system. Such an approach is not appropriate.

RESPECTFULLY SUBMITTED THIS 7th day of February, 2020.

OFFICE OF THE UTAH ATTORNEY GENERAL


*/s/ Vanessa R. Walsh*
VANESSA R. WALSH
Assistant Utah Attorney General
*Attorney for Defendants*