FILED
2021 MAR 22 AM 9:57
CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ADAM KELLER, as legal guardian of C.K., a minor child,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>ALPINE SCHOOL DISTRICT; Alpine School District Board of Education ; Tarra Anderson, in her official and individual capacity; Jane Does 1-5, in their official and individual capacities,<br><br>　　　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:19-cv-874 DBP<br><br>Chief Magistrate Judge Dustin B. Pead |

This matter is before the court on Defendants' Motion to Dismiss First Amended Complaint. (ECF No. 33.) The parties in this case consented to the undersigned conducting all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). Fed. R. Civ. P. 73. (ECF No. 15.) The court heard oral argument on the matter March 12, 2021. During oral argument agreement was reached as to some issues in the motion. First, Plaintiff agreed to dismiss Defendant Tara Anderson in her official capacity from claims six, seven, eight and nine, which are brought under 42 U.S.C. § 1983 because she is not a person subject to suit under § 1983. Second, Defendant agreed to withdraw their motion to dismiss as to the claim involving the withholding of food from C.K. Therefore, Defendant Anderson is dismissed as to counts six, seven, eight and nine. And, Plaintiff's claim regarding the withholding of food will continue in this case. The court turns to the remaining issues in Defendants' motion and concludes the motion should be granted in part.

## BACKGROUND

The facts are taken from Plaintiff's Second Amended Complaint. C.K. is a minor who has multiple significant disabilities. He is nonverbal and has diagnoses of Epilepsy, Cortical Dysplasia, Lobectomy, Anxiety, and Autism. C.K. attended Dan Peterson School, a special purpose school for those with moderate to severe special needs, that is within Defendant Alpine School District. Children without disabilities do not attend Dan Peterson. C.K. transferred to Dan Peterson from Foothill Elementary in August 2016 and remained there until June of 2018, when he transferred back to Foothill Elementary. Foothill Elementary is a general purpose school where children both with and without disabilities attend. C.K. began attending Dan Peterson after his teacher at Foothill Elementary recommended that it would be a better fit.

While at Dan Peterson C.K. was placed in the classroom of Defendant Tarra Anderson. Ms. Anderson was assisted by "five different classroom aides, paraprofessionals, or paraeducators during the relevant period." Amended Compl. ¶ 25. After C.K. began attending Dan Peterson, Mr. and Mrs. Keller started noticing changes in C.K's behavior. The Kellers expressed concerns at parent teacher conferences and at meetings with the Individualized Education Plan team about C.K.'s behavior, and whether or not Dan Peterson was a good fit for their son. Each student with special needs has an Individualized Education Plan (IEP).[1] "The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and

---

[1] The Utah State Board of Education has published special education rules for students with special needs. An IEP includes the input of parents along with others. The Utah State Board of Education Rules may be found at https://schools.utah.gov/file/bff61848-ae42-4265-a654-6dae5f398507.

procedures to determine whether the child has met the goals." *Ass'n for Cmty. Living in Colorado v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993).

Plaintiffs allege their requests to move C.K. back to Foothill Elementary were denied until June of 2018, when Mrs. Keller called the principal of Dan Peterson and stated that she wanted C.K. transferred back to Foothill Elementary. The principal responded that it was Mrs. Keller's right to move C.K. and in June 2018 C.K. was moved.

During the relevant time period C.K. had a Student Health Care Plan that was created and adopted by Defendants. C.K's Student Health Care Plan contained information regarding his diagnoses, specific diet needs, and medication information. In March 2017, the Kellers received notes in C.K's communication folder informing them that snacks were being withheld from C.K. due to his behavior. Amend Compl. ¶ 43. The Kellers contacted C.K's medical provider who wrote a letter to the school requesting that food not be withheld. The staff agreed that they would no longer restrict C.K.'s food, and agreed to allow a "healthy snack." *Id.* ¶ 48-49. Ms. Anderson and others allegedly continued to withhold food and water from C.K. in response to his behavior because C.K. "consistently came home from school noticeably famished and dehydrated." *Id.* ¶ 50.

In September 2017, the Kellers received information in C.K's communication folder that C.K. had been placed in a "Rifton chair." A Rifton chair is a "mechanical aid intended to help children who need support in developing the ability to sit upright and maintain posture …. It is a high-backed chair with armrests, straps, and supports, and often on wheels for movement between activities." *Id.* ¶ 55. C.K. had been placed in the Rifton chair and removed from the classroom for screaming. In January 2018, Mrs. Keller's sister substituted in C.K.'s classroom and noticed that C.K. was buckled into the Rifton chair for most of the day in class.

From January through March 2018, the Kellers received additional notes via the communication folder, that Ms. Anderson and those who helped her were using the Rifton chair as a response to C.K's behavior "hitting, kicking, screaming and pinching." *Id.* ¶ 62. For example, a note in February 2018 indicated that C.K. was placed in his Rifton chair out in the hallway for quiet time because he was kicking and screaming. The Kellers were concerned about the use of the Rifton chair and raised these concerns to the IEP and Behavior Intervention Plan teams. Defendants assured the Kellers that the Rifton chair was not being used as a disciplinary tool and its use was infrequent. Records, however, indicate it was used more frequently than represented. According to Plaintiff, a "conservative estimate yields that C.K. spent multiple hours per day, multiple days per week, in the Rifton chair from September 2017 to May of 2018." *Id.*¶ 84.

Plaintiff filed the Amended Complaint against Defendants on July 8, 2020. Plaintiff alleges ten causes of action asserting violations of the American Disabilities Act (ADA), 42 U.S.C. §§ 12131 *et seq.*, Rehabilitation Act, 29 U.S.C. §§ 794, *et seq.*, the Fourth Amendment, guarantees of Equal Protection under the Fourteenth Amendment, and due process claims. In response to the Amended Complaint, Defendants filed the current motion to dismiss.

## LEGAL STANDARDS

Under Rule 12(b)(6), the court must accept all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (citing *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). In accordance with Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although "detailed factual allegations" are

not required, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcrof v. Iqbal*, 556 U.S.662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint is insufficient if it offers "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, constitutes facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not a "probability requirement," but it looks for more than a "sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* And the court is not bound to accept as true legal conclusions couched as a factual allegation. *See id.* Deciding whether a complaint states a plausible claim for relief, is a context-specific task, that requires a court to draw on its "judicial experience and common sense." *Id.* at 679. And, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "'show[n]'"—"'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

To state a claim under the ADA, Plaintiff must allege (1) that C.K. "is a qualified individual with a disability," (2) that C.K. was "either excluded from participation in or denied the benefits of some entity's services, programs, or activities, or was otherwise discriminated against by the public entity," and (3) "that such exclusion, denial of benefits, or discrimination

was by reason of his disability." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). Proof of discrimination may be shown by demonstrating that Defendants acted intentionally on the basis of Plaintiff's disability. See *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228-29 (10th Cir. 2009) ("'Intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'") (quoting *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (9th Cir. 1999)). Or, discrimination may also be established by evidence showing Defendants refused to provide Plaintiff with a reasonable accommodation after learning of a disability and Plaintiff's request for a reasonable accommodation. *See Robertson v. Las Animas Cnty. Sheriffs Dep't.*, 500 F.3d 1185, 1195 (10th Cir. 2007) ("to effectuate Title II's mandate, the regulations require public entities to "'make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability'") (citation omitted).[2]

### I.   Plaintiff's Requests for Accommodation (Claim One)

Plaintiff's Amended Complaint alleges two requests for an accommodation. The Kellers made a request in 2017 for C.K. that snacks not be withheld due to his medical conditions and his medications. Defendant agreed to accommodate this request. However, as pled, it appears there may have been some continued withholding of snacks due to behavioral issues. As noted previously, Defendants withdraw the instant motion as to this request for an accommodation. Thus, the claim relating to this request may continue to move forward.

---

[2] "Title II's use of the term 'reasonable modifications' is essentially equivalent to Title I's use of the term 'reasonable accommodation.'" *Robertson*, 500 F.3d at 1195. *See McGary v. City of Portland*, 386 F.3d 1259, 1266 n. 3 (9th Cir.2004) ("Although Title II of the ADA uses the term 'reasonable modification,' rather than 'reasonable accommodation,' these terms create identical standards."). In Title II cases, the Tenth Circuit has used the terms interchangeably, referring to an individual's request for a "modification" under Title II as a request for "accommodation." *See, e.g., Tyler v. City of Manhattan*, 118 F.3d 1400, 1407 (10th Cir.1997).

Second, Plaintiff made a request that C.K. be transferred back to Foothill Elementary.

The Amended Complaint alleges as follows:

> 32. Following this parent-teacher conference, at almost every meeting with Ms. Anderson or the IEP team, Mrs. Keller noted that Dan Peterson was not a good fit for C.K. and asked that he be moved back to Foothill Elementary.
>
> 33. The IEP team repeatedly denied the Kellers' requests and responded that C.K. would have to meet behavioral requirements in order to transfer back to Foothill Elementary.
>
> 34. Mrs. Keller renewed her request that C.K. be moved back to Foothill Elementary on at least four occasions prior to June of 2018.
>
> 35. In June of 2018, Mrs. Keller called the principal of Dan Peterson and stated that she wanted C.K. transferred back to Foothill Elementary. On information and belief, the principal responded that this was Mrs. Keller's right as a parent. The principal regularly attended C.K.'s IEP meetings.
>
> 36. Following this call, C.K. transferred back to Foothill Elementary for the 2018-2019 school year.

Amended Compl ¶¶ 32-36.

As demonstrated by Plaintiff's pleadings, this request was also granted by Defendants. However, in contrast to the allegations concerning the withholding of food, there are no assertions in the Amended Complaint that Defendants failed to comply with the requested accommodation. Instead, there are general assertions of being "repeatedly denied" without more. The court questions whether a claim may be brought for a requested accommodation that is eventually made, especially in an instance such as this, where there are no alleged due process violations for any delay.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, constitutes facts which allow "the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* Here, the court finds the allegations regarding the request to change schools, do not raise much more than a sheer possibility that Defendants acted unlawfully. *See id.* Thus, they fail to meet Rule 8's pleading requirements and claim one as it relates to these allegations will be dismissed. Additionally, seeking equitable relief for the request to move schools is moot given that the request was already granted. Accordingly, Defendants' motion is granted as to the second requested accommodation.

## II. Claims Two and Four

Defendants argue that Plaintiff's second and fourth causes of action should be dismissed because Plaintiff was not denied access to educational services. In support, Defendants allege Plaintiff raises three occasions of being removed from a classroom for problematic behavior over a two-year period, and that is not enough to be considered a denial of benefits.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. To assert the ADA claim, Plaintiff has to show that he (1) has a disability; (2) was discriminated against by a public entity; and (3) the discrimination was "by reason of [his] disability." *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

Plaintiff asserts the following in the Amended Complaint.

79. On information and belief, MS. Anderson or Jane Does 1-5 removed C.K. from the classroom and had him sit in a dark room while strapped into the Rifton chair any time that the other children were engaged in group activities and lessons or during quiet time. As a result, C.K. was unable to participate in classroom activities and benefit from the social aspect of interacting with his peers in the classroom.

85. During the time C.K was in a Rifton chair, he was largely immobilized, often completely separated from his classmates and removed from the classroom, and unable to access the typical educational environment.

Amended Compl ¶¶ 79, 85. While the court agrees with Defendants' reliance on *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1296 (10th Cir. 2016), for the proposition that there is "no authority suggesting [that] a school may not regulate a student's conduct if that conduct is a manifestation of a disability." *Id.* Here, there are allegations of more than three instances of removal from the classroom. And, Defendants' justifications for those removals are more appropriately considered at the summary judgment stage, not on a motion to dismiss. *Watkins v. Jordan School Dist.* 2020 WL 2617928, *3 (D. Utah May 22, 2020) (denying motion to dismiss certain claims due to the differing standards between a motion to dismiss and motion for summary judgment). Accordingly, Defendants' motion is denied as to claims two and four.

### III. Claim Three

Defendants argue Plaintiff has failed to allege sufficient facts to establish that Defendants did not provide services in the most integrated setting. In implementing Title II's proscription against discrimination, the Attorney General issued a regulation known as the "integration regulation." It requires a "public entity [to] administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130; *see also Olmstead v. L.C. ex rel. Zimrin*, 527 U.S. 581, 591-92 (1999). The most integrated setting is defined as "'a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible.'" *Olmstead*, 527 U.S. at 592 (quoting 28 CFR pt. 35, App. A, p. 450 (1998)).

Defendants point to C.K.'s IEP that was created under the Utah State Board of Education rules. The decision to place C.K. at Dan Peterson was made by a team of specialists and because "the integration mandate is based on the contents of the IEP, no determination can be made if Foothill Elementary was the most integrated setting." (ECF No. 33 p. 17.)

In response Plaintiff asserts that a "multitude of facts" have been alleged regarding a failure to serve C.K. in the most integrated setting. The Amended Complaint provides:

> 148. Defendants did not allow C.K. to receive services in the most integrated setting when they transferred him to Dan Peterson, where he would have no interaction with his nondisabled peers, over the objections of the Kellers.

> 149. Defendants repeatedly failed to provide C.K. with the most integrated services when they refused at least 4 distinct requests for C.K. to return to Foothill Elementary prior to June of 2018.

> 150. When Defendants finally acquiesced and allowed C.K. to be transferred back to Foothill Elementary, they stated that such a transfer was always Mrs. Keller's right as a parent.

> 151. Because Defendants did not allow C.K. to attend Foothill Elementary for a sustained period of time, C.K. received a segregated educational experience, and was placed in greater jeopardy of unreported abuse and neglect than his non-disabled peers.

Amended Compl. ¶¶ 148-151. The court finds these allegations conclusory. Plaintiff presumes Foothill Elementary is the most integrated setting without offering enough in the Amended Complaint. There is nothing regarding allegations that the IEP was improper, and as noted by Defendants, if Plaintiff's assertions are taken as true, no school that serves only students with moderate to severe special needs would be considered allowable under the integration mandate. Accordingly, Plaintiff's third cause of action is dismissed.

### IV. Claim Five

Claim Five alleges C.K. received unequal or less effective educational services in violation of the Rehab Act. Under the Rehab Act "No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance." 34 C.F.R. § 104.4. As recipients of federal financial assistance, Defendant Alpine School District may not deny C.K. the "opportunity to participate in or benefit from the aid,

benefit, or service" or provide C.K. with an "aid benefit, or service that is not as effective as that provided to others." *Id.*

Plaintiff alleges his educational services were unequal because he was not permitted to attend a school with nondisabled peers. Further, the educational services were unequal because "he was repeatedly and routinely restrained for large swaths of time in a Rifton chair which is only used at schools for children with disabilities." Amended Compl. ¶ 162. And, C.K. was "repeatedly punished for symptoms related to his disability." *Id.* ¶ 164.

Even in drawing reasonable inferences in favor of Plaintiff, the court finds the Amended Complaint fails as to Claim Five. Plaintiff avers Foothill is a typical elementary and that his educational needs were met after he transferred back to that school. Yet, the Amended Complaint is silent regarding specifics at Foothill that were somehow better or more effective than Dan Peterson. Plaintiff's claims are basically a complaint against every specialized school that serves those with specialized needs. This fails to meet the *Iqbal* and *Twombly* standards. A complaint is insufficient if it offers "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Claim Five is dismissed.

## V.   Claim Nine

The Equal Protection Clause requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV. An equal protection violation occurs when the government treats someone differently than another who is similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Tenth Circuit has noted that a complaint is subject to dismissal "for failure to set out specific examples of similarly situation individuals and differing treatment." *Kansas Penn Gaming, LLC v. Colins*, 656 F.3d 1210, 1219 (10th Cir. 2011); *see also Glover v. Mabrey*, 384 Fed.Appx. 763, 778 (10th Cir. 2010)

("[Plaintiff] has failed to allege, as it must, the identity or characteristics of other, similarly situated contractors and how those similarly situated contractors were treated differently.")

Defendants assert Plaintiff has failed to meet this standard because Plaintiff's Amended Complaint fails to adequately allege that C.K. was treated differently than other similarly situated students. Plaintiff alleges the following: C.K. was "mechanically restrained based, in part or in whole, on his disabilities"; students without disabilities were not subject to the same abuses, such as being "repeatedly and routinely restrained … in a Rifton chair which is only used at schools for children with disabilities"; C.K. was not allowed to attend a school with nondisabled peers; Amended Compl. ¶¶ 161, 162, 215.

Plaintiff also cites to *Sutherlin v. Indep. Sch. Dist.*, 960 F.Supp.2d 1254 (N.D. Okla. 2013), a case out of the Northern District of Oklahoma. In *Sutherlin*, the plaintiffs alleged their son was subjected to nearly constant bullying by his peers, and despite numerous complaints, the school district did nothing to limit bullying. This eventually led to some serious challenges for the plaintiff's son. The defendants moved to dismiss the plaintiff's equal protection claims, which were based upon a "class of one" theory. In rejecting the defendant's arguments, the court found that students attending the school district were "similarly situated for purposes of the School District's treatment of bullying allegations." *Id.* at 1264. The court relied on language from the Tenth Circuit, where in *Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008) the Tenth Circuit stated, "For persons to be similarly situated, they must be alike 'in all relevant respects.'" The *Sutherlin* court noted that the only relevant characteristic for purposes of whether the bullying allegation is sufficient, is that a student attends school within the district under the bullying policies. The *Sutehrlin* plaintiffs had pled specific allegations in

support of the class of one theory, including the number of incidents of bullying, the number of

complaints, and how others who complained had corrective action taken on their behalf.

Here, Plaintiff does not assert a class of one theory. *See Jicarilla Apache Nation v. Rio

Arriba County*, 440 F.3d 1202, 1211 (10th Cir.2006) (noting the requirements to bring a class of

one theory and how cautious such theories must be applied, otherwise federal courts would

become "'general-purpose second-guessers of the reasonableness of broad areas of state and

local decision making: a role that is both ill-suited to the federal courts and offensive to state and

local autonomy in our federal system'") (citation omitted). And, Plaintiff's Amended Complaint

makes broad assertions, without pointing to specific examples of similarly situated students that

were treated differently. *See Ritter*, 517 F.3d at 1199 ("For persons to be similarly situated, they

must be alike in all relevant respects.") Taken literally, the Amended Complaint basically asserts

it is an Equal Protection violation to have any special needs student in a specialized school

designed to help such students. The court finds this fails to meet the applicable pleading

standards and therefore this cause of action is dismissed.

## VI.   Claim Six

In claim six Plaintiff alleges an unlawful seizure in violation of the Fourth Amendment.

"A seizure occurs when 'a reasonable person would have believed that he was not free to

leave.'" *Couture v. Bd. of Educ. of Albuquerque Pub. Sch*., 535 F.3d 1243, 1250 (10th Cir. 2008)

(quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)). But, seizures must be considered

"differently in the school context, as students are generally not at liberty to leave the school

building when they wish." *Id.* at 1250-51; *see also Wallace v. Batavia School Dist. 101,* 68 F.3d

1010, 1013 (7th Cir. 1995) ("[L]aw compels students to attend school, which deprives them of a

level of freedom of mobility. Once under the control of the school, students' movement and

location are subject to the ordering and direction of teachers and administrators."). "To qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." *Couture*, 535 F.3d at 1251.

As alleged, C.K. was subject to restrictions. He was placed in a Rifton chair on a number of occasions. Plaintiff characterizes the Rifton chair as a "mechanical aid intended to help children who need support in developing the ability to sit upright and maintain posture, and is intended for appropriate, prescribed use by a qualified medical provider or physical therapist. It is a high-backed chair with armrests, straps, and supports, and often on wheels for movement between activities." Amended Compl. ¶ 55. When "buckled in a Rifton chair" C.K.'s mobility was limited. And, according to Plaintiff, when C.K. was buckled in the chair and removed from the classroom, an unlawful seizure occurred.

Defendants disagree, and point to the standard in *Couture* mentioned previously, where a six-year-old child was placed in a closet-like "timeout room", and the circumstances in *Ebonie S. v. Pueblo School Dist. 60*, 695 F.3d 1051 (10th Cir. 2012), as analogous to those here. In *Ebonie*, the Tenth Circuit rejected allegations that a seizure occurred in the context of the Fourth Amendment. A student with significant limited intellectual capacity was placed in a secure wrap-around desk that had a securing bar behind the student's chair. This prevented the student from removing herself without significant effort and forced her to sit in a chair facing forward. In dismissing the seizure claims the court pointed to the normal way the student had to sit—facing forward, that the student could remove herself, and the restraining mechanisms were not attached to the student's body. *Id.* at 1057.

14

Before determining whether an in-school seizure is permissible, a "plaintiff must satisfy a preliminary hurdle: [they] must show that the school's restrictions rose to the level of a seizure under the Fourth Amendment." *Id.* at 1056. As noted by counsel during oral argument, whether or not a claim is properly asserted under the Fourth Amendment is close. Ultimately the scale tips in favor of Defendants because Plaintiff's own characterization of the Rifton chair in the Amended Complaint undermines the argument that the "restraining mechanism attaches directly to C.K.'s body." (ECF No. 34 p. 16.) Further, the chair would require C.K. to sit in the normal position for a student as noted in *Ebonie*, and the mere fact that C.K. was removed from the classroom for disciplinary reasons would not constitute a seizure. Seizures must be considered differently in the school context, and in viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the court is not persuaded that a viable cause of action for a violation of the Fourth Amendment has been asserted. Accordingly, Plaintiff's sixth claim is dismissed.

### VII.   Claim Seven

Claim Seven seeks relief under denial of substantive due process. The substantive due process guarantee protects an "'individual from the arbitrary exercise of the powers of government.'" *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quoting *Hurtado v. California*, 110 U.S. 516 527 (1884)). "By requiring the government to follow appropriate procedures when its agents decide to "deprive any person of life, liberty, or property," the Due Process Clause promotes fairness in such decisions." *Id.* "[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'" *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992)).

To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." Instead, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."

*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (quoting *Harder*, 64 F.3d at 574) (internal citation omitted).

Plaintiff alleges C.K. "has a liberty interest in personal security and freedom from restraint and inflection of pain through a course of conduct that shocks the conscience." Amended Compl. ¶ 185. Defendants allegedly continued to use the Rifton chair in a manner that caused physical and emotional harm, and "used mechanical restraints on C.K. to punish him for behavior stemming from his disability, such as throwing food, kicking, screaming, head butting, or hitting." *Id.* ¶ 191. Defendants argue the allegations in the complaint, even when viewed in their most favorable light, do not raise to a level that shocks the conscience. Rather, at best, they would constitute an ordinary tort, which is not a violation of due process. The court agrees with Defendants.

Interestingly, Plaintiff first argues the court should apply a different standard, using a reasonableness test, rather than the shock the conscience test that is not only used by the Tenth Circuit, but also referenced in Plaintiff's Amended Complaint. The court declines to adopt a reasonableness standard and Plaintiff does not cite any authority for this proposition. Plaintiff further suggests that the Supreme Court has explicitly recognized that "reckless indifference to the rights of a plaintiff may be considered—conscience shocking." (ECF No. 34 p. 17.) And here Defendants conduct was at least reckless and indifferent to the needs of C.K. The case cited to by Plaintiff is easily distinguishable from the one at hand. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), involved a death through deliberate or reckless indifference to life in a high-speed

automobile chase aimed at apprehending a suspected offender. And even in that case, the Supreme Court held that substantive due process was not violated. Here, the conduct is much less extreme. The allegations in the Amended Complaint do not meet the requisite shock the conscience test and therefore fail to state a claim. *See Livsey v. Salt Lake Cty.* 275 F.3d 952, 958 (10th Cir. 2001) ("The defendants' conduct, however ill-advised, inappropriate, or ill-considered it might have been, does not "shock the conscience of federal judges"). Claim Seven is therefore dismissed.

### VIII.   Claim Eight

Claim Eight seeks relief for deprivation of liberty without due process. The Fourteenth Amendment forbids the State from depriving an individual of life, liberty or property without due process of law. "A person alleging that he 'has been deprived of his right to procedural due process' must prove two elements: that he possessed a constitutionally protected liberty or property 'interest such that the due process protections were applicable,' and that he was not 'afforded an appropriate level of process.'" *Zwygart v. Board of County Comm'rs of Jefferson County, Kan.*, 483 F.3d 1086, 1093 (10th Cir.2007) (quoting *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir.1994)). Corporal punishment in public schools implicates a constitutionally protected liberty interest. *Ingraham v. Wrigh*, 430 U.S. 651 (1977). Yet, "there can be no deprivation of substantive rights as long as disciplinary corporal punishment is within the limits of the common-law privilege." *Id.* at 676. And, "the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools, as that practice is authorized and limited by the common law." *Id.* at 682.

Defendants argue that Plaintiff has failed to allege sufficient facts to show due process protections are applicable here. Plaintiff alleges the use of the Rifton chair and or twine at one

point, violated his right to be free and violated due process. C.K.'s parents never consented to Defendant's "customs, policies and/or practices" that included the use of the Rifton chair or twine. Amended Compl. ¶ 205. Defendants misled and failed to disclose the use of the Rifton chair, and the failure to provide notice of its use violated Constitutional rights. "Defendants were required to provide notice to the Kellers regarding the use of the mechanical restraints and gain their informed consent." *Id.* ¶ 206.

The court finds Plaintiff's allegations fail to state a claim. Plaintiff offers no authority that parents must consent to district policies or practices. The Amended Complaint notes that the Kellers were informed about the use of the Rifton chair via the communication folder, so contrary to Plaintiff's allegations, they were notified of its use. And finally, when viewing the facts alleged in the most favorable light to Plaintiff, they fail to rise to a level of corporal punishment implicating due process rights. The facts here fit within the Supreme Court's holding in *Ingraham v. Wrigh*, 430 U.S. at 682. Claim Eight is dismissed as it fails to state a claim.

## IX.    Claim Ten

Defendants argue that Claim Ten, which brings a claim of negligence against Defendants, is barred by the Governmental Immunity Act (Act). A governmental entity is defined as a "state and its political subdivisions". Utah Code Ann. § 63G-7-102. This includes school districts. The Act protects the state from suits "for any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment, if the injury arises out of or in connection with, or results from: … assault, battery, false imprisonment, … infliction of mental anguish, or violation of civil rights". Utah Code Ann. § 63G-7-201. In determining whether an injury falls within this exception, the focus is "on the conduct out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged."

*Ledfors v. Emery Cty. Sch. Dist.*, 849 P.2d 1162, 1166 (Utah 1993); *see also Tiede v. State*, 915 P.2d 500, 502 (Utah 1996) (holding the State immune from a wrongful death claim un the Act). If an injury is "proximately caused by immune conduct" then the Act applies. *Barneck v. Utah Dept. of Transp.* 2015 UT 50, ¶ 44, 353 P.3d 140, 151.

In applying the Act courts have held that governmental entities are immune from claims or injuries arising from assault and battery. *See, e.g., Larsen v. Davis Cty. Sch. Dist.*, 2017 UT App 221, ¶ 37, 409 P.3d 114 (holding the school district immune under the Act from battery that arose from a sexual relationship); *Taylor on Behalf of Taylor v. Ogden City Sch. Dist.*, 927 P.2d 159 (Utah 1996) (holding school district immune from suit for injuries arising out of an assault); *Ledfors v. Emery Cty. Sch. Dist.*, 849 P.2d 1162 (Utah 1993) (holding the school district immune from suit for claims alleging negligence that arose out of assault or battery). The Act also bars suits alleging claims of infliction of mental anguish. *See, e.g., Atiya v. Salt Lake Cty.*, 852 P.2d 1007, 1011 (Utah Ct. App. 1993) (upholding dismissal of claims for intentionally inflicted emotional distress under the Act and noting that even if the claims arose from a negligent act, they would still be barred); *see also Jensen v. Gale*, No. 1:13-CV-00030 DN, 2014 WL 7246948, at *13-*14 (D. Utah Dec. 18, 2014) (holding that injuries arising from both the intentional and negligent infliction of mental anguish fall within the Act).

Plaintiff alleges negligent acts and omissions by Defendants led C.K. to suffer "injuries, damages, and losses, including, but not limited to: emotional distress, fear, anxiety, and trauma; lost and diminished learning capacity; and expenses for past and future medical care, psychological care, and occupational and behavioral therapies." Amended Compl. ¶ 228. These negligent actions include restraining C.K. in a Rifton chair in response to his behavior, continuing to improperly use the Rifton chair, removing C.K. from the classroom, withholding

snacks, and among other things, failing to abide by discipline policy. Defendants' negligent acts "comprise the tort of negligence as defined under Utah law", *Id.* at ¶ 231.

In reading Plaintiff's Amended Complaint, and in viewing the allegations in the light most favorable to Plaintiff, the court is persuaded that Claim Ten falls within the Government Immunity Act. As noted by this court in *Gale*, "governmental entities are immune from suit for "any" injury—negligent, intentional, or otherwise." *Gale*, 2014 WL 7246948, at *13. Plaintiff brings a negligence claim asserting injuries that arose from Defendants' negligence. The focus is on the conduct from which the alleged injuries arose, *Ledfors*, 849 P.2d at 1166, and if the injury is proximately caused by immune conduct then the Act applies. *Barneck*, 2015 UT 50 at ¶ 44. Many of C.K's injuries fall within those set forth in the plan language of the statue. And for those that are not explicitly set forth, the Utah Court of Appeals decision in *Atiya*, and the Utah Supreme Court's decision in *Barneck*, lead the court to find that they are barred under the Act. *See Atiya*, 852 P.2d at 1011 n. 6 ("even if Dr. Atiya had alleged that her injuries arose from a negligent act of the County or its employee, [the Act] still would not provide relief in this case because of an explicit exception to the waiver provided for by that section for injuries arising out of "'infliction of mental anguish.'"); *Barneck*, 2015 UT 50 at ¶ 36 ("The Immunity Act's waivers extend to injuries "proximately caused" by a governmental entity's negligence."

Claim Ten therefore is dismissed.

ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion to

Dismiss is GRANTED IN PART and DENIED IN PART.

The following claims are dismissed: Claim one as to Plaintiff's request for an

accommodation that C.K. be transferred back to Foothill Elementary; Claim Three; Claim Five;

Claim Six; Claim Seven; Claim Eight; Claim Nine; and Claim Ten.

Claim one remains as to Plaintiff's request for an accommodation regarding food. Claims

Two and Four also remain as part of the case.

IT IS SO ORDERED.


DATED this 22 March 2021.


Dustin B. Pead
United States Magistrate Judge